**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EARL THOMAS,<br><br>*Plaintiff,*<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; MISSOURI HIGHER EDUCATION LOAN AUTHORITY; & UNITED STATES DEPARTMENT OF EDUCATION,<br><br>*Defendants.* | CIVIL ACTION<br><br>No. 2:26-cv-2371 |

**ORDER**

AND NOW, this ____ day of ___________________, 2026, upon consideration of Defendant U.S. Department of Education's motion to dismiss, and any response thereto, it is hereby ORDERED that the motion is GRANTED. It is further ORDERED that Plaintiff's claims against the U.S. Department of Education are DISMISSED with PREJUDICE.

BY THE COURT:

____________________________
CHAD F. KENNEY
Judge, United States District Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EARL THOMAS,<br><br>*Plaintiff,*<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; MISSOURI HIGHER EDUCATION LOAN AUTHORITY; & UNITED STATES DEPARTMENT OF EDUCATION,<br><br>*Defendants.* | CIVIL ACTION<br><br>No. 2:26-cv-2371 |

**DEFENDANT UNITED STATES DEPARTMENT OF EDUCATION'S**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) & 12(b)(6)**

Plaintiff Earl Thomas alleges the Department of Education ("DOE") willfully and negligently violated the Fair Credit Reporting Act ("FCRA") by failing to investigate his disputes to credit reporting agencies regarding his already discharged student loans. As set forth in the accompanying memorandum, DOE moves to dismiss Thomas' complaint. Loan servicers, and not DOE, furnish data to the credit reporting agencies. As a result, DOE does not receive notice of disputes from credit reporting agencies and—because DOE is not notified of a credit dispute—no triggering event under the FCRA occurs. Without demonstrating that DOE—and not a third party—was responsible for his alleged injury, Thomas lacks standing to bring suit and fails to state a claim against DOE as a matter of law.

Respectfully submitted,

DAVID METCALF
United States Attorney

/s/ Susan R. Becker for GBD
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

/s/ Isaac J. Jean-Pierre
ISAAC J. JEAN-PIERRE
Assistant United States Attorney
United States Attorney's Office
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Phone: (215) 861-8372
Email: isaac.jean-pierre@usdoj.gov

Dated: August 20, 2026

*Counsel for Defendant U.S. Department of Education*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EARL THOMAS,<br><br>*Plaintiff,*<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; MISSOURI HIGHER EDUCATION LOAN AUTHORITY; & UNITED STATES DEPARTMENT OF EDUCATION,<br><br>*Defendants.* | CIVIL ACTION<br><br>No. 2:26-cv-2371 |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT UNITED STATES DEPARTMENT OF EDUCATION'S**
**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) & 12(b)(6)**

## I. INTRODUCTION

Plaintiff Earl Thomas ("Thomas") alleges the Department of Education ("DOE") and co-defendant Missouri Higher Education Loan Authority ("MOHELA") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*., by inaccurately reporting his credit information to co-defendant Experian Information Solutions, Inc. ("Experian").[1] Accordingly, Thomas contends that DOE and MOHELA are liable to him for "willfully and negligently" failing to follow the requirements imposed on furnishers.

Thomas' FCRA claim against DOE fails for several reasons. First, loan servicers, such as MOHELA, transmit monthly account data to credit reporting agencies ("CRAs") and receive and investigate consumer disputes routed to them by the CRAs independent of DOE. The relationship between the loan servicers and CRAs results in Thomas

[1] On or about June 15, 2026, Thomas settled with co-defendant Equifax Information Services, LLC ("Equifax"). *See* ECF No. 22.

lacking standing against DOE. The DOE did not receive consumer disputes from the CRAs; therefore, its obligation to investigate such disputes—and any alleged failure to abide by the FCRA's investigation requirement—never materialized.

Similarly, because Thomas only alleges conclusory facts establishing that (1) DOE received notice of the disputed information from CRAs or (2) that DOE furnished the disputed information, he fails to state a claim that DOE allegedly acted negligently—let alone willfully—in responding to alleged inaccuracies.

## II. STATUTORY BACKGROUND

### A. Fair Credit Reporting Act

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). "In the Consumer Credit Reporting Reform Act of 1996, Congress amended the FCRA" and, in doing so, "added provisions addressing those who furnish information to consumer reporting agencies [(CRAs)]."[2] *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 46 (2024). The FCRA places certain duties on those who furnish information to CRAs, including the duty to provide accurate information under 15 U.S.C. § 1681s-2(a) and the duty to investigate the completeness and accuracy of the information furnished in certain circumstances under 15 U.S.C. § 1681s-2(b). *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011).

---

[2] Case law treats the terms "'consumer reporting agencies' and 'credit reporting agencies'" as "synonymous," and both terms are commonly "abbreviated as 'CRAs.'" *Smitherman v. Experian Info. Sols., Inc.*, 2022 WL 225085, at *6 (D. Nev. Jan. 25, 2022).

There is no private cause of action for violations of the duty to provide accurate information under 15 U.S.C. § 1681s-2(a). *See SimmsParris*, 652 F.3d at 358 (15 U.S.C. § 1681n, creating civil liability for willful noncompliance of any portion of the FCRA, and 15 U.S.C. § 1681o, creating civil liability for negligent noncompliance with the FCRA, "cannot be used by a private individual to assert a claim for a violation of § 1681s–2(a), as such claims are available only to the Government."); *see also* 15 U.S.C. § 1681s-2(c) (stating that sections 1681n and 1681o do not apply to any violation of section 1681s-2(a)).

However, an individual can sue a furnisher of information for violations of the duty to investigate. *SimmsParris*, 652 F.3d at 359 ("[i]t is only when the furnisher fails to undertake a reasonable investigation following such notice that it may become liable to a private litigant"). Under the FCRA, a furnisher must (a) conduct an investigation with respect to the disputed information; (b) review all relevant information provided by the CRA; (c) report the result of the investigation to the CRA; (d) if the investigation finds that the information is incomplete or inaccurate, report those results to all other CRAs; and (e) if the information disputed is found to be inaccurate or incomplete or cannot be verified then promptly modify, delete or permanently block that information. 15 U.S.C. § 1681s-2(b); *see also Farren v. RJM Acq. Funding, LLC*, 2005 WL 1799413, at *4 (E.D. Pa. July 26, 2005). This provision has been construed to require a "reasonable investigation." *Id.* at *4.

### B. DOE's Student Loan Program

DOE is an executive department within the United States government that was created in 1980 "to promote student achievement and preparation for global

competitiveness by fostering educational excellence and ensuring equal access."[3] To achieve its mission, DOE "establishes policies relating to federal financial aid for education, administers distribution of those funds and monitors their use."[4] DOE provides subsidized and unsubsidized loans to qualified borrowers under various loan programs.[5]

Pursuant to section 430A of the Higher Education Act of 1965, as amended (20 U.S.C. § 1080a), the federal government is required to provide to CRAs data regarding each debt that it holds until it is repaid. DOE contracts with third-party student loan servicers to perform loan servicing and related administrative functions for federally held student loans, including furnishing credit information to CRAs on DOE's behalf. *See* Ex. A, Declaration of David Druckerman ("Druckerman Decl."), ¶ 2.

## III. FACTUAL AND PROCEDURAL BACKGROUND

### A. Thomas' Student Loan History

Thomas had two outstanding Direct Plus Parent Loans[6] (the "Loans") that were borrowed on April 22, 2019 ("Loan No. 1") and February 3, 2020 ("Loan No. 2"). *See* Ex. B, Loan Summary.[7] Loan No. 1 was for $26,632.00, and Loan 2 was for $32,000.00.

---

[3] U.S. Department of Education, *Mission of the U.S. Department of Education*, https://www.ed.gov/about/ed-overview/mission-of-the-us-department-of-education, (last visited Aug. 6, 2026).

[4] U.S. Department of Education, *An Overview of the U.S. Department of Education: How Does ED Serve Students*?, https://www.ed.gov/about/ed-overview/overview-of-us-department-of-education-how-does-ed-serve-students, (last visited Aug. 6, 2026).

[5] Federal Student Aid, *Direct Subsidized and Direct Unsubsidized Loans*, https://www.studentaid.gov/understand-aid/types/loans/subsidized-unsubsidized, (last visited Aug. 6, 2026).

[6] Direct Plus Loans are "federal loans that eligible graduate or professional students and parents of dependent undergraduate students can use to help pay for college or career school." *See* Federal Student Aid, *Direct Plus Loans,* https://studentaid.gov/understand-aid/types/loans/plus, (last accessed Aug. 13, 2026).

[7] On a motion to dismiss, the Court may consider an undisputedly authentic document on which the claims are based. *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Both loans were for tuition at Walnut Hill College and were taken out on behalf of a student named Alyssa Legette. *See id.*; *see also* Ex. C, National Student Loan Data System (NSLDS) Details – Loans 1 & 2. MOHELA was the assigned federal loan servicer since the inception of both loans. *See* Ex. C, National Student Loan Data System (NSLDS) Details – Loans 1 & 2, at 1-2 (Loan 1), 8-9 (Loan 2).

Thomas submitted several identity theft-based discharge applications to DOE through MOHELA, which were denied. *See* ECF No. 18, MOHELA's Answer and Affirmative Defenses, at 9 ("[DOE] denied [Thomas'] loan discharge applications multiple times .... [Federal regulations require Thomas] to certify that he did not sign the promissory note, certify that he did not receive or benefit from the proceeds of the loan, provide certain identifying information, including name, social security number, date of birth, copy of driver's license, and other information, like a signature exemplar.").

On December 15, 2025, following Thomas' disability-based discharge application, he received a full discharge on both loans. *See* Ex. B, Loan Summary. *See also* Ex. C at 1 (Loan 1), 8 (Loan 2).

### B. Procedural History

On April 11, 2026, Thomas filed a two-count[8] complaint against DOE, MOHELA, and Experian. *See* ECF No. 1, Compl. Count one alleges DOE negligently and willfully violated the FCRA, 15 U.S.C. § 1681n (willful noncompliance) and 15 U.S.C. § 1681o

[8] The first count of the complaint asserts violations of the FCRA by DOE, MOHELA, and Experian. The second count of the complaint asserts a defamation of character claim against Experian as the remaining credit reporting agency to this suit.

(negligent noncompliance), by failing to comply with requirements in 15 U.S.C. § 1681s-2(b).

Thomas claimed DOE violated the FCRA because it "continues to furnish credit data which is incorrect and materially misleading, and Defendants Experian's and Equifax's reporting of the ... [tradelines][9] continues to be incorrect and materially misleading." ECF No. 1, Compl., ¶ 21. He claims the information provided to the CRAs "is and was inaccurate in that the accounts were not opened by [him] and [he] did not authorize anyone to open these accounts in his name." *Id.* ¶ 10.

### C. Role of Student Loan Servicers and the Education Department in Student Loan Administration

DOE uses third-party loan servicers, like MOHELA, to administer federal student loans. *See* Ex. A, Druckerman Decl., ¶¶ 2-4[10] Among other functions, the loan servicers—not DOE—report borrower account information to CRAs monthly and respond to any consumer disputes about that information. Ex. A, Druckerman Decl. ¶¶ 4–5, 8–12.

To report borrower information, each servicer registers with the CRAs as a "data furnisher" under its own unique identifier. *Id.* ¶¶ 5, 8. The servicer then transmits monthly account information about each borrower (such as the loan balance, payment

---

[9] "A 'tradeline' is an entry for a debt which is listed in a consumer credit report." *Kohut v. Trans Union LLC*, No. 04 C 2854, 2004 WL 1882239, at *1 n. 2 (N.D. Ill. Aug. 11, 2004).

[10] In deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record. *Tristar Products, Inc. v. SAS Group, Inc.*, 2009 WL 3296112, at *4 (D.N.J. Oct. 9, 2009) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993)). However, a court need not convert a motion under Rule 12(b) to a motion to summary judgment where the court is asked to "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Tristar*, 2009 WL 3296112, at *4 (court considered a declaration and its attachments without converting the motion to dismiss to a motion for summary judgment).

status, and delinquency information) directly to the CRAs. *Id.* ¶¶ 2–4. DOE neither transmits this information to the CRAs nor receives it from servicers. *Id.* ¶¶ 2-5, 11.

When a borrower disputes information on his credit report, the CRA routes that dispute electronically to the specific servicer that furnished the information—based on the servicer's unique identifier. *Id.* ¶¶ 7–10. The CRA does not route the dispute to DOE or to any other servicer. *Id.* ¶¶ 8, 10–11. Nor does DOE receive the dispute from the servicer. *Id.* The servicer that receives the dispute is independently responsible for investigating it, reviewing the borrower's account information, determining whether any correction is warranted, and reporting the results back to the CRA. *Id.* ¶¶ 10–13. DOE does not direct or control the servicers' handling of individual disputes. *Id.* ¶¶ 13–14. Instead, its role is limited to setting high-level contractual requirements and issuing periodic guidance to ensure that servicers act consistent with prevailing industry practices. *Id.* ¶¶ 13–14.

Consistent with this division of responsibilities, DOE's records confirm that it did not receive any dispute—from Plaintiff directly or from any CRA—concerning this case. *Id.* ¶¶ 17–18.

## IV. ARGUMENT

### A. Legal Standards

#### i. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)

A case is properly dismissed for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when the court does not have either the statutory or the constitutional power to adjudicate the case. *Givey v. Dept. of J., E. Dist. of PA*, 2023 WL 4551569, at *2 (E.D. Pa. July 14, 2023), *aff'd sub nom. Givey v. U.S. Dept. of J.*, No. 23-2330, 2023 WL 8889553 (3d Cir. Dec. 26, 2023). In evaluating a Rule 12(b)(1) motion, a court must

first determine whether the movant presents a facial or factual attack. *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A facial attack "concerns 'an alleged pleading deficiency' whereas a factual attack concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008).

In contrast to a facial challenge, a factual challenge allows "a court [to] weigh and consider evidence outside the pleadings." When a factual challenge is made, "the plaintiff will have the burden of proof that jurisdiction does in fact exist," and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (internal citations omitted).

**ii. Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept as true the well-pleaded allegations in the complaint and draw all reasonable inferences in favor of the non-movant, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. When deciding a Rule 12(b)(6) motion, the court "may consider documents that are attached to or submitted with the complaint … and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders,

[and] items appearing in the record of the case.'" *Buck v. Hampton Tp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal citations omitted).

### B. Thomas lacks standing because he has not demonstrated injury fairly traceable to DOE.

Article III of the United States Constitution limits the power of the federal judiciary to "cases" and "controversies." *Cottrell v. Alcon Laboratories*, 874 F.3d 154, 161 (3d Cir. 2017); U.S. Const. art. III. For a federal court to exercise jurisdiction under Article III, a plaintiff must allege and prove that they have "standing" to pursue their claims. *Cottrell*, 874 F.3d at 161.

As "the party invoking federal jurisdiction," the plaintiff bears the burden of establishing the minimal requirements of Article III standing: (1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) is likely to be redressed by a favorable judicial decision. *Id.*

Here, Thomas alleges generalized harms—including "losses relating to credit denials, loss of use of funds, loss of credit and loan opportunities, excessive and/or elevated interest rate and finance charges, out-of-pocket expenses, cellular telephone minutes, postage, faxing and other related costs," a decreased credit score and emotional distress. ECF No. 1, Compl. ¶¶ 26-28;

Thomas must show that his injuries are "fairly traceable to the challenged conduct" of DOE. *Norman v. Trans Union, LLC*, 669 F. Supp. 3d 351, 374 (E.D. Pa. 2023). "Traceability means that the injury was caused by the challenged action of the defendant as opposed to an independent action of a third party." *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 158 (3d Cir. 2022). The traceability element is "akin to

'but for' causation in tort." *Id.* at 374 (citing *LaSpina v. SEIU Pennsylvania State Council*, 985 F.3d 278, 284 (3d Cir. 2021)).

For his FCRA claim, Thomas must show that the specific conduct he is permitted to challenge under the FCRA—DOE's alleged failure to investigate after receiving notice of a dispute from a CRA—caused his alleged injuries. *See, e.g., DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("standing inquiry requires careful judicial examination . . . to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted") (quoting *Allen v. Wright*, 468 U.S. 737, 752 (1984)).

Here, loan servicers register with the CRAs as data furnishers under their own unique subscriber codes, and they—independently of DOE—transmit monthly account data and receive and investigate consumer disputes routed to them by the CRAs. Ex. A, Druckerman Decl., ¶¶ 2–13. DOE plays no role in any of these furnishing or dispute-handling activities. *Id.* Accordingly, any errors concerning Thomas' account balances cannot be attributed to DOE. Because Thomas cannot show that DOE caused his alleged injuries—let alone caused them through a violation of a statutory duty—his FCRA claim against DOE fails.

Thomas cannot establish that DOE's alleged failure to investigate caused the alleged injuries because it has no role in routine consumer dispute investigations and does not even receive disputes that initiate such investigations. Ex. A, Druckerman Decl., ¶¶ 8, 10—11. Instead, when a consumer files a credit dispute, the CRA routes that dispute to the registered loan servicer, which does not forward them to DOE, as the servicers are independently responsible for conducting investigations of such disputes. *Id.* ¶¶ 8–13. Any failure to investigate Thomas' dispute is therefore

traceable, if at all, to MOHELA—the entity responsible for the disputed tradeline and that bore responsibility for investigating disputes about it—not to DOE.

Because Thomas cannot establish the traceability element of Article III standing, the case should be dismissed for lack of subject-matter jurisdiction.

### C. Thomas has failed to state a plausible FCRA claim and the claim must be dismissed under Rule 12(b)(6).

Even if Thomas had standing (which he does not), his complaint must be dismissed for failure to state a claim. Plaintiff's claim against DOE under § 1681s-2(b) fails for the independent reason that Thomas cannot establish that DOE was the "person" that furnished the disputed student loan information to a CRA or that DOE received the requisite statutory notice contemplated by § 1681i(a)(2).

Under the FCRA, a "person" must (a) conduct an investigation with respect to the disputed information; (b) review all relevant information provided by the CRA; (c) report the result of the investigation to the CRA; (d) if the investigation finds that the information is incomplete or inaccurate, report those results to CRAs; and (e) if the information disputed is found to be inaccurate or incomplete or cannot be verified then promptly modify, delete or permanently block that information. 15 U.S.C. § 1681s-2(b); *Farren*, 2005 WL 1799413, at *4. This provision has been construed to require a "reasonable investigation." *Id.* at *4.

Thomas' claim fails because he only alleges conclusory facts that (1) DOE received notice of the disputed information from CRAs, or (2) that DOE furnished the disputed information. As a result, the statutory obligation to conduct a reasonable investigation was never triggered.

#### i. DOE never received notice of Thomas' dispute from a CRA.

The FCRA does not impose the duties of § 1681s-2(b) upon every entity associated with a consumer's account. Under the statutory framework and clear language of the FCRA, a consumer must first alert the CRA if the completeness or accuracy of any item of information contained in a consumer's file at a CRA is in dispute. *See* 15 U.S.C. § 1681i(a)(1). It is then up to the CRA to inform the person that furnished that information that there has been a dispute, thereby triggering the furnisher's duty to investigate. *See* 15 U.S.C. § 1681i(a)(2). Section 1681s-2(b) expressly provides that a furnisher's duty to investigate arises only "[a]fter receiving notice pursuant to section 1681i(a)(2)" of a consumer dispute concerning the completeness or accuracy of information furnished to a CRA. *See* 15 U.S.C. § 1681s-2(b)(1). Accordingly, the statutory duty runs to the person that provided the disputed information to the CRA and arises only after that person receives the CRA's notice of the consumer's dispute. Only when the furnisher fails to undertake a reasonable investigation following such notice would it become liable to a private litigant under § 1681s–2(b). *SimmsParris*, 652 F.3d at 359.

Thus, the "viability of a claim arising under section 1681s-2(b) necessarily depends upon the entity that received notification of the consumer's dispute from the credit reporting agency." *Jenkins v. Capital One, N.A.*, 2017 WL 1323812, at *5 (E.D.N.Y. Feb. 28, 2017).

Thomas alleges only conclusory facts establishing that DOE itself received notice of his dispute from a CRA. FCRA liability requires "a proper chain of notice," requiring

that a defendant-furnisher "[receive] notice from a CRA regarding the inaccuracies." *Sprague v. Salisbury Bank and Tr. Co.*, 969 F.3d 95, 100 (2d Cir. 2020).

Had DOE received notice of Thomas' dispute, he could readily plead this fact with particularity. Indeed, litigants can "easily ascertain without discovery whether [a defendant] received the requisite notice from credit reporting agencies" because the FCRA itself "expressly provides that a consumer is entitled to receive . . . the business name and address of any furnisher of information contacted in connection with [disputed] information." *Neiman v. Chase Bank, USA, N.A.*, 2014 WL 3705345, at *7 (N.D. Ill. July 25, 2014) (citing 15 U.S.C. § 1681i(a)(6)(A)). Courts have therefore criticized the practice of "drag[ging] [a defendant] into court without conducting a concrete investigation into whether its duties under the FCRA were ever triggered." *Densmore v. Gen. Motors Acceptance Corp.*, 2003 WL 22220177, at *2 (N.D. Ill. Sept. 25, 2003) ("condemning the practice of 'file first, research later'").

Because DOE was not the entity that furnished the disputed information, the CRA's notice to the servicer did not trigger § 1681s-2(b)'s investigation obligations as to DOE. Thomas cannot adequately plead that DOE received notice of his dispute from a CRA, and therefore, he cannot state a claim against DOE under § 1681s-2(b) merely alleging that DOE was somehow aware of, or involved in, Plaintiff's consumer dispute. Plaintiff therefore cannot state an FCRA claim against DOE because he has not plausibly pled facts showing that the duty to investigate was ever triggered. *See, e.g.*, *Harper v. Bank of New York*, 2026 WL 1174506, at *23 (E.D.N.Y. Apr. 30, 2026) ("Significantly, under § 1681s-2(b), a furnisher is only required to conduct an investigation concerning the disputed information following the receipt of notice from a [CRA]."); *Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 344 (E.D.N.Y. 2012)

(dismissing FCRA claim where there is no evidence that any CRA "contacted [defendant] directly with respect to Plaintiff's account").

**ii. DOE did not furnish the disputed information**

Thomas' FCRA claim must also be dismissed because he does not plausibly plead that DOE furnished the disputed information to any CRA. Thomas conflates DOE with the actual "person" that furnished the information at issue. Only furnishers of the disputed information have a duty to investigate disputes concerning that information. 15 U.S.C. § 1681s-2(b)(1) (describing the "[d]uties of furnishers of information" as follows: "After receiving notice . . . of a dispute with regard to . . . any information provided by a person to a [CRA], the person shall" investigate); *see also Weber v. Goldman Sachs Bank USA,* 2023 WL 2614144, at *2 (E.D.N.Y. Mar. 23, 2023) (federal regulations define a "furnisher" as "an entity that furnishes information relating to consumers to one or more [CRAs]" (quoting 16 C.F.R. § 660.2)).

Thomas does not plausibly allege that DOE itself furnished the disputed information and, because he has not plausibly alleged that DOE furnished the disputed information, he has not shown that DOE had any duty to investigate it—a defect fatal to his FCRA claim. *See, e.g., Meyers v. PNC Fin. Servs. Grp., Inc.*, 2022 WL 4536829, at *5 (D. Conn. Sept. 28, 2022) ("the FCRA requires a furnisher of information . . . to investigate the accuracy of the information it provided to a [CRA] if it receives notice of a purported inaccuracy from a consumer reporting agency.").

The FCRA "does not impose additional dispute resolution duties beyond the furnisher itself or otherwise provide for vicarious liability." *Strohbehn v. Access Grp. Inc.*, 292 F. Supp. 3d 819, 829–30 (E.D. Wis. 2017) (declining to impose "vicarious liability running from a third-party loan servicer back to the creditor" while

distinguishing cases imposing vicarious liability "on a furnisher when one of its own employees violates the FCRA in some manner, usually by obtaining someone's credit information for an improper purpose"); *see also Stewart v. JP Morgan Chase Bank*, 2020 WL 444248, at *3 (N.D. Ill. Jan. 28, 2020) (dismissing FCRA claim where Plaintiff alleged that Freddie Mac "is the 'creditor'" and "is a furnisher of information" where Freddie Mac noted that it "does not collect payments from borrowers, otherwise service loans, or report missed payments" to CRAs); *Williams v. Cap. One Bank (USA), N.A.*, 2018 WL 317712, at *11 (N.D. Ala. Jan. 8, 2018) ("Because LexisNexis, and not Capital One, provided Equifax with the [relevant] information . . . , Capital One cannot be considered a 'furnisher of information' for the purposes of plaintiff's FCRA claim. . . ."), *aff'd*, 785 F. App'x 741 (11th Cir. 2019); *Cannon v. United Guar. Residential Ins. Co.*, 2017 WL 819707, at *5 (S.D. Ind. Mar. 2, 2017) (no liability under the FCRA where defendant did not furnish "data about any debt to a [CRA]" and rejecting argument that defendant "is responsible for" the third party's actions); *Kwang Kim v. Wilmington Tr. Co.*, 2018 WL 4296983, at *4 (S.D. Cal. Sept. 7, 2018) (defendant not liable for failure to investigate because "to be liable under the FCRA as a furnisher, [defendant] must have provided credit information to a [CRA]" and the defendant here "provides a declaration stating that '[a]ll student loans . . . at issue in the Complaint[] are serviced by other entities'").

## V. CONCLUSION

For the foregoing reasons, DOE respectfully requests that the Court grant its motion and dismiss Thomas' complaint with prejudice.

Respectfully submitted,

DAVID METCALF
United States Attorney

/s/ Susan R. Becker for GBD
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

/s/ Isaac J. Jean-Pierre
ISAAC J. JEAN-PIERRE
Assistant United States Attorney
United States Attorney's Office
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Phone: (215) 861-8372
Email: isaac.jean-pierre@usdoj.gov

Dated: August 20, 2026

*Counsel for Defendant U.S. Department of Education*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused a true and correct copy of the foregoing Motion to Dismiss to be served via electronic court filing (ECF).

Dated: August 20, 2026

/s/ Isaac J. Jean-Pierre
ISAAC J. JEAN-PIERRE
Assistant United States Attorney